# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SYMETRA LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) 2:18-cv-00492-JDL |
| v. | )<br>) |
| GUY RAYMOND EMERSON, | )<br>) |
| Defendant. | ) |

## ORDER ON PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER

This matter comes before the court on Symetra Life Insurance Company's ("Symetra") emergency ex parte motion for a temporary restraining order (TRO) (ECF No. 4). *See* Fed. R. Civ. P. 65(b)(1).

In considering a request for a temporary restraining order, the court must determine: "(1) the movant's likelihood of success on the merits; (2) whether and to what extent the movant would suffer irreparable harm if the request were rejected; (3) the balance of hardships between the parties; and (4) any effect that the injunction or its denial would have on the public interest." *Díaz-Carrasquillo v. García-Padilla*, 750 F.3d 7, 10 (1st Cir. 2014) (citing *Corporate Techs., Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013)).

### I. FACTUAL BACKGROUND

At this point, the Court has only the materials submitted by Symetra, from which I glean the following facts: Symetra Financial Corporation is a diversified financial services company with more than 1,600 employees nationwide. Symetra is

a wholly owned subsidiary of Symetra Financial Corporation. Symetra has been in the insurance industry for over 50 years, and during that time has developed its goodwill and reputation within the industry. Symetra owns U.S. Federal registration serial number 3127698 for the SYMETRA mark, ECF No. 1 ¶ 7, and has also made extensive use of the mark SYMETRA LIFE INSURANCE COMPANY to designate services that it provides, *id.* ¶ 8. Symetra also maintains a website, https://www.symetra.com, where it advertises its services and provides biographical information about the leadership team of Symetra. *Id.* ¶ 9. The website also contains images of members of the leadership team.

Guy Raymond Emerson ("Emerson") is and has been a disability claimant under his former employer's Life and Disability Plan with Symetra. As a plan participant, Emerson submitted a claim for long term disability to Symetra, which has been administering his claim, apparently to Emerson's dissatisfaction. Without the knowledge or authorization of Symetra, Emerson registered the domain name "symetralifeinsurancecompany.com" for his own use. Emerson then launched a website ("the Website") hosted at that domain, where he has published personally identifying information about numerous officers, directors, and employees of Symetra and that of their family members, some of whom are minors.

The personally identifying information on the Website includes the full names multiple Symetra employees, their home addresses, and the names of their spouses, children, and other relatives. The Website also encourages members of the public to contact the named Symetra employees:

> If a Symetra Claims Representative is delaying, denying, engaging in bad faith tactics, or committing outright fraud to avoid paying your valid insurance claim, call them, e-mail them, or pay them a visit at home. If you don't have their home address, home phone number, or e-mail address, contact me and I will find them for you.

*Id.* ¶ 36. The Website also singles out one particular employee and her children:

> If [Symetra Employee] is delaying, or denying your valid insurance claim feel free to stop by her home to discuss your claim with her. If [Symetra Employee] is not home when you arrive, I'm sure that her daughter [First Child], or her daughter [Second Child], would be more than willing to keep you company until she arrives home.

*Id.* ¶ 37.

The Website is structured and designed in a way that makes it appear as though the Website is affiliated with Symetra; for example, it includes a copyright notice identifying Symetra as the owner. The Website also includes allegedly false statements about Symetra. For example, the Website includes the following quotation, which is attributed to Symetra's Chief Executive Officer: "Well of course we engage in bad faith tactics like delaying and denying our policy holders [*sic*] valid claims. How do you think me [*sic*], my key executive officers, and my board members stay so damn rich. [*sic*]" *Id.* ¶ 29.

## II. LEGAL ANALYSIS

### A. Likelihood of Success on the Merits

The complaint alleges trademark infringement under the Lanham Act, 15 U.S.C.A. § 1114 (West 2018) (Count I), common law trademark infringement (Count II), and defamation (Count III).

To prevail on a trademark infringement claim under § 1114, a plaintiff must show "1) that he uses, and thereby 'owns,' a mark, 2) that the defendant is using that

same or a similar mark, and 3) that the defendant's use is likely to confuse the public, thereby harming the plaintiff." *N. Light Tech. v. N. Lights Club*, 97 F. Supp. 2d 96, 109 (D. Mass. 2000), *aff'd* 236 F.3d 57 (1st Cir. 2001) (internal quotation omitted). At this early stage in the proceedings, I am satisfied that the allegations in the complaint meet the first two elements. *See* ECF No. 1 ¶¶ 7-8.

Whether the use is likely to confuse the public "is a question of fact." *Dorpan, S.L. v. Hotel Melia, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013). Here, the facts before me suggest that Emerson adopted Symetra's marks for the purpose of confusing the public by creating a web page that looks as though it is a part of Symetra's business operations. This is evidenced by, for example, the inclusion of a copyright notice on the Website. Emerson also used Symetra's exact marks. Therefore, at this early stage, the likelihood of public confusion element is also satisfied. Because the same factual allegations form the basis for both Symetra's Lanham Act claim and its common law trademark infringement claim, I reach the same conclusion with respect to the latter. *See Benchmark v. Benchmark Builders, Inc.,* No. CIV. 00-151-PH, 2000 WL 1886570, at *7 (D. Me. Dec. 29, 2000).

Symetra is also likely to prevail on its state law defamation claim. "The elements of a defamation action under Maine common law[] are: (1) a false and defamatory statement pertaining to the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) defamation per se or special harm." *Pan Am Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 11 (D. Me. 2012) (citing *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2002)). "Under Maine law,

4

statements are defamatory *per se* if they relate to a persons' [sic] profession, occupation, or official station." *Id.* at 17.

At this early stage, the nature of the statements about Symetra, Symetra's assertion that they are false, and the allegation that the statements were posted on the internet suffice to satisfy the first two elements. The allegations in the complaint are also sufficient to indicate that Emerson "negligently disregarded the falsity of the statements." *Id.* at 16. Furthermore, the statements on the Website concern the way that Symetra processes its claims, which relates to the business of the company and the profession of Symetra employees who handle the processing of claims. Therefore, the final element is also satisfied.

I therefore conclude that Symetra is likely to succeed on the merits of its claims.

To the extent that Symetra seeks injunctive relief directed at Emerson's speech encouraging others to contact the company and its employees with complaints about the business, whether at the workplace or at home, or at public "*ad hominem*" comments, ECF No. 4 at 10, the Court will not grant the emergency relief that is sought. The Court also will not prohibit Emerson from publishing allegations that Symetra has engaged in fraudulent or improper business practices, or from publishing the personally identifying information of Symetra employees, officers, agents, and directors. Symetra's submission fails to demonstrate how such injunctive relief would not unlawfully impair Emerson's First Amendment rights. The Court will, however, enjoin Emerson from encouraging others to contact the children and other family members of employees about Symetra's business practices because

contact of that nature has the potential to cause irreparable emotional harm to those family members, who have no employment or professional relationship with Symetra.

**B. Irreparable Harm**

I also conclude that Symetra will suffer irreparable harm absent a TRO. The public disclosure of the personal information of the children and family members of Symetra's employees is harmful to Symetra's ability to provide a safe and professional environment for its employees. Furthermore, the continued misuse of Symetra's marks is likely to cause irreparable harm to Symetra's goodwill and business reputation.

**C. Balance of Hardships**

The balance of hardships weighs in Symetra's favor. Temporarily enjoining Emerson from misusing Symetra's marks and from publicizing personally identifying information regarding the children and family members of Symetra's workforce imposes no more than a modest hardship on Emerson. Furthermore, there is an ongoing risk of harm to Symetra's business reputation resulting from the unauthorized use of its marks.

**D. Public Interest**

Based on my review of Symetra's submission, I conclude that the issuance of a temporary restraining order is in the public interest. Nothing in the materials before me suggests that the entry of a temporary restraining order will work against the public interest.

## III. CONCLUSION

Because of the sensitive nature of the information Symetra seeks to protect, and the fact that Symetra asserts that Emerson previously responded to a request from Symetra to take down the Website by adding to its content, I conclude that prior notice of the motion should not be required under these circumstances. *See* Fed. R. Civ. P. 65(b)(1).

For the reasons stated above, I hereby **ORDER** that a Temporary Restraining Order is entered as follows:

A. Guy Raymond Emerson, and all other persons acting for, with, by, through or under authority of Emerson, or in concert or participation with Emerson, and each of them, are enjoined from:

1. using any trademark, logo, design, or source designation of any kind on or in connection with any online presence that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Symetra's trademarks, trade dresses, or logos;

2. using any trademark, logo, design, or source designation of any kind on or in connection with any online presence that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are sponsored or authorized by Symetra, or are in any way connected or related to Symetra;

3. any publication of any personally identifiable information pertaining to the children or family members of any Symetra employee, agent, officer, or director.

7

B. The website currently maintained at the domain "symetralifeinsurancecompany.com" shall immediately be either (1) modified to take out information and trademarks that violate Section III(A)(1), (2), and (3) of this order, or (2) discontinued.

It is also **ORDERED** that Symetra provide as security either cash or bond in the sum of $5,000, in accordance with Fed. R. Civ. P. 65(c).

It is further **ORDERED** that the clerk is directed to schedule a preliminary injunction hearing within fourteen (14) days.

**SO ORDERED.**

Dated this 4th day of December, 2018

                                                    **/s/ JON D. LEVY**
                                                    **U.S. DISTRICT JUDGE**